383 A.2d 526
**COMMONWEALTH of Pennsylvania**

v.

**Frank W. BARKY, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 1977.
Decided March 23, 1978.

---

Lester G. Nauhaus, Louis R. Dadowski, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Robert A. Zunich, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Frank W. Barky, Jr., was tried by a judge and jury and was convicted of murder of the third degree. Post-verdict motions were denied, and appellant was sentenced to a prison term of ten-to-twenty years. This direct appeal followed.

The facts are as follows. On February 18, 1975, Ruth Miller, the victim, spoke on the phone with her daughter, Roberta Condos. The victim told her daughter that she was at appellant's home and that she and appellant would be going to West Virginia to visit a sick relative.

Between February 18 and February 23, Tom Quaill, a friend of appellant, attempted to contact appellant. During that period, Quaill both phoned appellant and went to his home. Quaill testified that he was unable to contact appellant.

On February 23, 1975, Mrs. Condos received a call from the relative in West Virginia who stated that the victim had never arrived in the mountain wilderness. After trying to contact her mother at appellant's home, Mrs. Condos called the McCandless police. A patrol car was dispatched to appellant's home, and the officer found all doors and windows locked with three cars sitting in the driveway. Lieutenant Charles Toth of the McCandless police decided to obtain a search warrant, after personally inspecting the outside of the premises.

After obtaining the warrant, Lieutenant Toth went to the Barky home, where he met fellow McCandless officer Kenneth Gravenstein and Allegheny County detectives Meinert and McNamara. After knocking several times and receiving no response, Meinert and Gravenstein forced open the kitchen door, breaking a safety chain in the process. After entering the house, the pair found appellant bleeding from the head with a shotgun pointed at them. After leaving the house to arm themselves, Meinert and Gravenstein re-entered the residence, again encountering appellant, who was

still armed with a shotgun. Meinert and Gravenstein again retreated from the house and then shot tear gas into the house. After entering the house for a third time, appellant was subdued and taken to Nórth Hills Passavant Hospital for treatment of his head wound. Lieutenant Toth found Ruth Miller's body in the bedroom. The coroner testified that death occurred between 6:00 a. m. and 2:00 p. m. on Saturday, February 22, 1975. The cause of death was both asphyxia due to manual strangulation and multiple injuries to the rib cage area. Further police investigation revealed that all doors and windows were locked from the inside, with the possible exception of the garage door, which may have been locked from the outside.

Appellant eventually recovered from his wounds. He was, however, suffering from amnesia and was unable to remember anything about the alleged homicide or his wound, though he is now fully recovered and completely competent.

Appellant contends that he was denied a fair trial because he was suffering from amnesia and thus was unable to either offer a defense or obtain effective assistance of counsel. Because of this, appellant claims he is entitled to a discharge. We disagree, for we rejected a similar claim in *Com. ex rel. Cummins v. Price,* 421 Pa. 396, 406, 218 A.2d 758, 763 (1966), where we stated:

".  .  .  This defendant  .  .  .  is able to comprehend his position as one accused of murder, is fully capable of understanding the gravity of the criminal proceedings against him, and is as able to cooperate with his counsel in making a rational defense as is any defendant who alleges that at the time of the crime he was insane or very intoxicated or completely drugged, or a defendant whose mind allegedly went blank or who blacked out or who panicked and contends or testifies that he does not remember anything." (Plurality opinion.)

We believe *Cummins* is indistinguishable from the instant case, since in both cases the defendants' amnesia affected only their memories of the alleged criminal incidents. As one commentator has stated:

". . . In his plight the amnesiac differs very little from an accused who was home alone, asleep in bed, at the time of the crime or from a defendant whose only witnesses die or disappear before trial. Furthermore, courts, of necessity, must decide guilt or innocence on the basis of available facts even where those facts are known to be incomplete, and the amnesiac's loss of memory differs only in degree from that experienced by every defendant, witness, attorney, judge, and venireman. How much worse off is a generally amnesic defendant on trial for murder, for example, than one who remembers all but the dispositive fact: who struck the first blow?" 71 Yale L.J. 109, 128 (1961).

We do not believe that appellant's amnesia alone denied him either the effective assistance of counsel or the opportunity to present a defense.

Appellant finally argues that his trial counsel was ineffective by failing to challenge the sufficiency of the evidence at post-verdict motions. However, our review of the record shows that trial counsel did allege that the verdict was against the weight of the evidence.

We thus must review the evidence under the standard set forth in *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 690 (1977), where we stated:

"This Court has often recognized that circumstantial evidence may be sufficient to support a conviction . . . [citations omitted.] 'The test of sufficiency of evidence is whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' "

Our review convinces us that the evidence was sufficient to sustain appellant's conviction.

When appellant was arrested and the victim's body discovered, appellant's house was completely locked. Further, the police testified that only the garage door could

have been locked from the outside. When appellant was arrested, he was armed with a shotgun. A neurosurgeon testified that appellant's head wound was caused by a shotgun from close range. Further, appellant's left forearm and right hand suffered injuries consistent with having beaten the victim. The evidence, particularly of appellant's injuries, his presence at the murder scene and the reasonable inferences therefrom, is sufficient to sustain his conviction for murder of the third degree. See *Commonwealth v. Rogozinski,* 387 Pa. 399, 128 A.2d 28 (1956).

Judgment of sentence affirmed.

ROBERTS, J., joins in this opinion and files a concurring opinion in which NIX and MANDERINO, JJ., join.

ROBERTS, Justice, concurring.

I join in the Opinion of the Court with the understanding that neither today's decision nor *Commonwealth v. Price,* 421 Pa. 396, 218 A.2d 758 (1966) (plurality opinion), cert. denied, 385 U.S. 869, 87 S.Ct. 136, 17 L.Ed.2d 96 (1966), establishes a per se rule that amnesia can never render an accused incapable of standing trial. Where amnesia affects the ability of an accused to prepare a defense, incapacity to stand trial may be demonstrated. See *United States ex rel. Parson v. Anderson,* 481 F.2d 94 (3rd Cir. 1973), cert. denied, 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973); *Wilson v. United States,* 129 U.S.App.D.C. 107, 391 F.2d 460 (1968); *Commonwealth v. Hubbard,* —— Mass. ——, 355 N.E.2d 469 (1976) (citing cases); *Jackson v. State,* 548 S.W.2d 685 (Tex. Cr.App.1977); see generally, Annot., 46 A.L.R.3d 544 (1972). Similarly, if sufficient evidence exists to show that the state of amnesia is temporary, the better course may be to grant a continuance rather than proceed immediately to trial. See Annot., 46 A.L.R.3d at 567–68.

NIX and MANDERINO, JJ., join in this concurring opinion.