THE STATE OF OHIO, APPELLEE, *v.* BROOKS, APPELLANT.

[Cite as State *v.* Brooks (1986), 25 Ohio St. 3d 144.]

(No. 85-1616—Decided July 23, 1986.)

*John T. Corrigan,* prosecuting attorney, and *Michael S. Nolan,* for appellee.

*Ronald C. Balbier,* for appellant.

*Per Curiam.* This court is confronted today by issues concerning the convictions and death sentence of appellant. For the reasons set forth below, we affirm the judgment of the court of appeals and uphold the death sentence.

I

In his first proposition of law, appellant contends that the failure of his defense counsel to introduce the testimony and report of a clinical psychologist relevant to the issue of his competence to stand trial at the competency hearing constituted ineffective assistance of counsel in violation of his rights under both the Ohio and United States Constitutions.

Under both Constitutions, a fair trial is guaranteed in all criminal prosecutions. One of the elements to a fair trial is the right to have the assistance of counsel. In *McMann* v. *Richardson* (1970), 397 U.S. 759, the United States Supreme Court recognized that "the right to counsel is the right to the effective assistance of counsel." In *Strickland* v. *Washington* (1984), 466 U.S. 668, the court determined the standard to be used in reviewing claims of ineffectiveness. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The court proceeded to devise a two-part test for reviewing claims of ineffectiveness: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. This court in *State* v. *Lytle* (1976), 48 Ohio St. 2d 391 [2 O.O.3d 495], devised a substantially similar test: "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his

client. Next * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Id.* at 396-397.

In the case *sub judice,* appellant argues that his trial counsel's failure to present evidence in their possession concerning the appellant's alleged incompetence to stand trial was a gross violation of an essential duty owed to appellant. Prior to appellant's trial a hearing was held in accordance with R.C. 2945.37[1] to determine the question of whether or not appellant was competent to stand trial. The prosecution presented the testimony of Dr. Aaron Billowitz, a psychiatrist from the Court Psychiatric Clinic. At the time of the hearing, Billowitz had examined appellant on two separate occasions for the purpose of determining competency. Billowitz reviewed the factors as prescribed under R.C. 2945.37(A), which provides in pertinent part: "A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence * * * that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." At the hearing, Billowitz testified that appellant (1) clearly understood the charges against him, (2) was able to work with his attorney in his defense despite "some mild limitations," and (3) was competent to stand trial.

Additionally, Billowitz' written report stated: "He [appellant] does, in my opinion, show good abilities to understand the charge against him and to work with his attorney in his defense."

Defense counsel did not present any testimony at the competency hearing. However, they did have in their possession the report of Dr. Sandra McPherson, a clinical psychologist who also examined appellant. Appellant now contends that he was denied effective assistance of counsel before trial in that his attorneys committed prejudicial error because they failed to present any evidence or argument at the competency hearing of appellant's incompetence to stand trial, despite the availability of such evidence, and despite the fact that such evidence tends to prove incompetency. We find no merit in appellant's contention. McPherson's competency hearing report comes to no definitive conclusion that appellant was incompetent to stand trial.

The report states that appellant understands the legal process, *i.e.,* the nature and objective of the proceedings against him. As to whether the appellant could assist in his defense, the report states: "The problem for competence arises in terms of the issue of denial and the act itself. *If his denial is a psychological artifact* [sic] of maintaining his repression of what occurred and is therefore all a part of his defense system and leads him to

---

[1] R.C. 2945.37(A) provides in relevant part:

"In a criminal action in a court of common pleas * * *, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial, the court shall hold a hearing on the issue as provided in this section. * * *"

construe reality quite differently from the way it actually was and is, at least insofar as his understanding of the act is concerned and his having done it, then in spite of the fact that he understands the legal process, he is not able psychologically to cooperate with his attorney in developing his defense. * * * However, from a legal point of view, *in order to come to conclusions of incompetency, one has to assume guilt* which in this case is still a matter of official question." (Emphasis added.) The report concluded with the recommendation "that pending the outcome of the trial and any change in his deportment and behavior that a further examination be conducted in the future should questions of mitigation be raised since this material would lay a foundation for certain aspects of mitigation, but at this point is tentatively based."

McPherson's report certainly does not amount to evidence that "tends to prove incompetency." Defense counsel did heed McPherson's advice and presented issues raised by her report at the later mitigation phase of the proceedings. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland, supra,* at 689.

In applying the instant facts to the two-part *Strickland* test, it is difficult to find defense counsel's conduct deficient or prejudicial. Assuming, *arguendo,* defense counsel's conduct was deficient, we cannot agree that failure to introduce the inconclusive findings of McPherson at the competency hearing was prejudicial to appellant. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* at 694. The omitted conclusions of McPherson did not find appellant incompetent to stand trial. Presentation of her report would not have caused the result of the proceeding to have been different. Thus, under the *Strickland* test, appellant has failed to establish his claim of ineffective assistance of counsel.

## II

Appellant's second proposition of law asserts that failure of his defense counsel to secure an opinion by an independent psychiatrist regarding the issue of his ability to cooperate with counsel in preparing his defense prior to the competency hearing constituted ineffective assistance of counsel in violation of his rights under both the Ohio and United States Constitutions.

This issue requires further application of the *Strickland* analysis. Appellant contends that his defense was prejudiced due to trial counsel's gross negligence in not securing an independent psychiatrist's opinion prior to the competency hearing. Appellant argues that (1) trial counsel knew of the findings of two separate court psychiatrists which indicated some possible mental illness and (2) trial counsel had possession of the report by McPherson, yet secured no independent psychiatric opinion. Appellant's argument centers around an illness known as psychogenic

amnesia. Dr. Kurt Bertschinger, who testified for appellant at the mitigation phase of the proceedings, diagnosed the symptoms described by McPherson as psychogenic amnesia. This type of amnesia was described as being the mind's way of dealing with a traumatic incident that is too overwhelming to confront. It was further described as differing from refusal or fabrication in that the amnesia is the mind's unconscious attempt to erase the recollection of the event whereas the latter are willful attempts at deceit. Thus, being unable to recall the events of the crime, appellant could not assist in his defense. Appellant arrives at the conclusion that had an independent psychiatric opinion such as Bertschinger's been secured prior to the competency hearing, he would have been found incompetent to stand trial. We do not arrive at that conclusion.

Prior to the competency hearing, appellant was examined by McPherson, Billowitz and Dr. Stanley Althof, a psychologist from the Court Psychiatric Clinic. As previously discussed, Billowitz concluded that appellant was competent to stand trial and McPherson came to no definitive conclusions. Althof, who testified at the mitigation hearing, concluded in his written report: "In summary, Mr. Brooks' psychological testing is consistent with the diagnosis of schizophrenia-paranoid type." However, he stated no opinion as to appellant's competency to participate in his defense. Billowitz had diagnosed appellant as having schizophrenia, residual type, but competent to stand trial.

Appellant states in his brief to this court that "[i]f the testimony of Dr. Bertschinger and the report of Dr. McPherson had been introduced at the competency hearing along with the testimony of Dr. Billowitz and Dr. Althof, then a preponderance of the evidence would have been in the Court's record showing the appellant was not competent to stand trial * * *." We must observe that Bertschinger, a private psychiatrist who testified at the mitigation hearing, found that appellant suffered from psychogenic amnesia prior to trial. He opined that appellant's condition would preclude his ability to cooperate effectively with counsel prior to trial. However, Bertschinger admitted that no other report on appellant specifically mentioned psychogenic amnesia.

A review of the mitigation hearing supports a finding that failure of defense counsel to secure an independent psychiatric report for the competency hearing does not constitute ineffectiveness of counsel under the standards set by *Strickland, supra.* The trial court heard testimony at the mitigation hearing from the psychiatrists and psychologists who examined appellant. The trial court unanimously rejected the claim of psychogenic amnesia, finding instead that appellant was merely refusing to discuss the events of the morning of the murders. Thus, the premise of appellant's claim of incompetency, the amnesia, although presented for the first time at the mitigation hearing, was soundly rejected by the trial court as fabrication both on the issues of competency and mitigation. Assuming, *arguendo,* appellant does suffer from psychogenic amnesia, this fact alone

would not render him incompetent to stand trial. Numerous jurisdictions have considered the question and are virtually in unanimous agreement that amnesia alone is not sufficient to render the accused incompetent to stand trial. See, *e.g., Ritchie* v. *State* (Ind. 1984), 468 N.E. 2d 1369; *Morrow* v. *State* (1980), 47 Md. App. 296, 423 A. 2d 251; *Commonwealth* v. *Barky* (1978), 476 Pa. 602, 383 A. 2d 526; *Thompson* v. *State* (Ala. Crim. App. 1978), 364 So. 2d 683; *United States* v. *Swanson* (C.A. 5, 1978), 572 F. 2d 523, certiorari denied (1978), 439 U.S. 849; *United States, ex rel. Parson,* v. *Anderson* (C.A. 3, 1973), 481 F. 2d 94, certiorari denied (1973), 414 U.S. 1072; *State* v. *McClendon* (1968), 103 Ariz. 105, 437 P. 2d 421; *Commonwealth, ex rel. Cummins,* v. *Price* (1966), 421 Pa. 396, 218 A. 2d 758, certiorari denied (1966), 385 U.S. 869. *Morrow* v. *State, supra,* states at 301: "Although 'there are no definitive judicial explanations' of what constitutes the ability to assist in one's own defense, * * * it is clear that the cases without exception reject the notion that an accused possesses that ability only if he is able to remember the circumstances of the crime with which he is charged." We agree with *Commonwealth* v. *Barky, supra,* which states at 606: "We do not believe that appellant's amnesia alone denied him either the effective assistance of counsel or the opportunity to present a defense." Thus, had the trial court determined appellant was suffering from amnesia, the finding on the incompetence issue would not have been different. Clearly, under the *Strickland* analysis, there was no prejudice to appellant's defense and we must reject this claim of ineffective assistance of counsel.

### III

Appellant next contends, in his third proposition of law, that the trial court and court of appeals erred in concluding beyond a reasonable doubt that pursuant to R.C. 2929.03, the aggravating circumstances outweighed the mitigating factors. The crux of appellant's argument is that (1) there were no witnesses to the murder, (2) appellant was mentally ill and under a great deal of stress, (3) appellant had no significant prior criminal record, and (4) the state did not prove beyond a reasonable doubt that appellant deliberately murdered his children according to a predetermined plan.

R.C. 2929.03(D)(3) provides in pertinent part: "* * * [I]f the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose the sentence of death on the offender." R.C. 2929.04(B) sets forth a non-exclusive list of mitigating factors the trial court must consider in deciding whether it should impose the death sentence.[2] When

---

[2] R.C. 2929.04(B) provides in pertinent part:

"If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt,

the death sentence is imposed by the trial court, R.C. 2929.05(A) requires the court of appeals to make an independent finding in which it must determine whether the aggravating circumstances outweigh the mitigating factors. For the reasons that follow, we conclude that the trial court and court of appeals properly considered all of the evidence in mitigation and we agree with their evaluation of that evidence.

The trial court properly addressed each and every mitigating factor enumerated in R.C. 2929.04(B). Appellant contends that the trial court's sentencing was in error because his state of mind on the morning of the murders could not be determined with any degree of certainty. Appellant has never revealed any evidence about that morning and there were no witnesses to the murders. However, two witnesses testified concerning appellant's behavior that morning. James Schobel, a neighbor, saw appellant walking the family dog, and Vonda Jackson spoke to appellant on the phone. They did not observe any unusual or irrational behavior.

Overwhelming circumstantial evidence adduced at the trial supports the lower courts' conclusions that appellant murdered his three sons according to a plan and with prior calculation and design. Approximately one month prior to the murders, appellant threatened his eldest son with the words, "You're dead." Nine days before the murders appellant traveled all the way across town to North Olmsted, lied on his federal permit application and purchased the murder weapon and ammunition. On the morning of the murders, appellant walked the family dog, thus providing an impression of normalcy. With prior knowledge that his wife would be at work, appellant carried out his plan at a time when he knew his acts would not be detected for a considerable length of time. This provided him with plenty of time to get to the bus station, purchase a bus ticket and flee

---

and if the offender did not raise the matter of age * * * or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, * * * or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

"(1)  Whether the victim of the offense induced or facilitated it;

"(2)  Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3)  Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4)  The youth of the offender;

"(5)  The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6)  If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7)  Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

before the bodies of his young sons were discovered. He also turned up the volume of his stereo to muffle the sound of the gunshots. Finally, appellant had also taken the time to pack his high school diploma and birth certificate as well as the murder weapon and additional ammunition. All of these facts point to the conclusion that appellant purposefully killed his three children with prior calculation and design.

Appellant also argues that he did not have a significant criminal record. It must be remembered, however, that lack of a significant history of prior criminal convictions is but *one* of the mitigating factors the court must weigh against the aggravating circumstances of the crime.[3]

Appellant further contends that the state did not prove beyond a reasonable doubt he was sane at the time of that act. However, Billowitz testified that appellant had the capacity to appreciate the criminality of his acts and to conform his conduct to the requirements of the law. Appellant did not provide any expert testimony to the contrary. Bertschinger, appellant's expert, stated he could not express an opinion with respect to mitigating circumstances at the time of the crime. Despite acknowledging that appellant was suffering from a mental illness at the time of the murders, the trial court believed the triple murder outweighed this mitigating factor. The court of appeals realized that appellant suffered from some form of schizophrenia but found appellant did not lack the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Both the trial court and court of appeals rejected appellant's contention of psychogenic amnesia. The trial court considered the testimony and reports of two competent psychiatrists. The trial court determined that Billowitz' expert testimony was more plausible and that appellant deliberately chose not to tell certain things which he recalled. The trial court's opinion detailed its findings with regard to the claim of psychogenic amnesia: "* * * [Appellant] was capable of recalling much of the details of the past. He conveniently had psychogenic amnesia only about those things that were incriminating, remembering things that were not incriminating, even though the incriminating and non-incriminating incidents or facts occurred at exactly the same time or close together in time."[4]

---

[3] R.C. 2929.04(C) provides in pertinent part:
"* * *

"The existence of any of the mitigating factors listed in division (B) of this section does not preclude the imposition of a sentence of death on the offender, but shall be weighed pursuant to divisions (D)(2) and (3) of section 2929.03 of the Revised Code by the trial court, trial jury, or the panel of three judges against the aggravating circumstances the offender was found guilty of committing."

[4] "Reginald A. Brooks denied the killing. Couldn't remember? He denied living at home when the killings occurred but he admitted getting on the bus the same day to go to Las Vegas. He admitted ownership of an innocuous suitcse [*sic*] found in his possession on the

In its independent review pursuant to R.C. 2929.05(A), the court of appeals held that appellant deliberately shot each of his three sons in the head according to a predetermined plan. That court also rejected the mental illness claim as a mitigating factor which outweighed the aggravating circumstances of this crime. The court of appeals also properly found that the death penalty is appropriate in this case and is not excessive or disproportionate to the penalty imposed in similar cases. This court finds that the trial court and court of appeals did not err in concluding that the aggravating circumstances of the crime outweigh any mitigating factors.

## IV

In his fourth proposition of law, appellant argues that imposition of the death penalty violates the rights granted to him by the Eighth and Ninth Amendments to the federal Constitution and Sections 2, 9 and 16, Article I of the Ohio Constitution. Essentially, appellant contends that the death penalty is cruel and unusual punishment and is not the least restrictive means of accomplishing any compelling state interest. This court fully addressed and rejected this argument in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, certiorari denied (1985), ___ U.S. ___, 87 L.Ed. 2d 643; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, certiorari denied (1985), ___ U.S. ___, 86 L. Ed. 2d 728; and *State* v. *Buell* (1986), 22 Ohio St. 3d 124. We therefore reject this proposition of law.

## V

Appellant's fifth proposition of law urges that Ohio's statutory framework for imposition of the death penalty which provides for a bifurcated trial violates his constitutional rights to a fair trial and effective assistance of counsel. Appellant contends that he was prejudiced by the bifurcated trial procedure because the same three-judge panel which determined appellant was competent to stand trial heard the guilt phase of the trial and then the penalty phase. Appellant believes that since the same court had found appellant competent to stand trial and guilty of executing a predetermined plan to kill his children, that court's objectivity regarding mitigating factors was highly questionable. This court has addressed this

---

bus. He stated then that it was his only luggage. He didn't tell the police of the luggage containing the murder gun and ammunition and denied any connection to it when it was found and he was confronted with it.

"He denied having received the divorce papers before the killings, whereas, in fact, he had.

"* * *

"He denied leaving Cleveland to flee, claiming he had left before the killings to obtain work in Las Vegas.

"He denied the incriminating facts of obtaining money with his Visa card on February 24th and purchasing the murder weapon with cash on February 25th.

"The Court concludes that his denials were lies, not memory lapses, and that he clearly was not a victim of psychogenic amnesia."

argument with regard to the use of the same *jury* for the separate phases of the trial in a death penalty case and rejected it. *State* v. *Martin* (1985), 19 Ohio St. 3d 122; *State* v. *Mapes* (1985), 19 Ohio St. 3d 108; *State* v. *Jenkins, supra.* We can articulate no reason why this argument should not also be rejected with regard to a three-judge panel. Moreover, appellant is unable to show he was the recipient of any prejudice resulting from this procedure. Based upon our prior holdings with regard to this issue where a jury was the trier of fact, we reject appellant's fifth proposition of law.

## VI

Appellant further contends in his sixth proposition of law that Ohio's statutory framework for imposition of the death penalty violates the Due Process and Equal Protection Clauses of the Ohio and United States Constitutions. Appellant argues that the statutorily prescribed weighing of aggravating circumstances and mitigating factors is violative of due process and equal protection because no standard or guideline is given to explain how the weighing is to be accomplished. Thus, appellant believes the lack of any meaningful standard precludes any meaningful appellate review and invites arbitrariness. Appellant concedes that these arguments were rejected in *State* v. *Jenkins, supra,* but urges this court to find error in that holding. However, we find that these arguments were fully addressed and properly rejected in *State* v. *Jenkins.* They therefore cannot be a basis for reversal in this case.

## VII

For his seventh and final proposition of law, appellant asserts that upon an independent weighing pursuant to R.C. 2929.05(A), the record does not sustain a finding that the death penalty is appropriate in this case. R.C. 2929.05(A) requires this court to independently weigh the aggravating circumstances against the factors appellant has presented which mitigate against the imposition of the death penalty.

R.C. 2929.05(A) states in pertinent part:

"* * * [T]he supreme court shall * * * review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case * * *."

R.C. 2929.05(A) further provides:

"* * * [T]he supreme court shall affirm a sentence of death only if the * * * court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case * * *."

In the instant case, appellant was found guilty of the aggravating circumstance of purposefully killing two or more persons. Appellant has primarily presented evidence in mitigation that he was mentally ill, under a great deal of stress and had no prior criminal record. The record,

however, shows a man who had a cold, calculated plan to murder his own sons and carried it out successfully. While he did suffer from some mental illness, he did not lack the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Following a careful consideration of the mitigating factors operating on appellant at the time he took the lives of Reginald, Jr., Vaughn and Niarchos Brooks, we can arrive at no other conclusion than that these mitigating factors do not outweigh the aggravating circumstances.

## VIII

Our final determination must be whether the death sentence is appropriate in this case. R.C. 2929.05(A) provides in relevant part: "* * * [T]he supreme court shall * * * determine * * * whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the * * * supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. * * *"

R.C. 2929.05(A) continues:

"* * * [T]he supreme court shall affirm a sentence of death only if * * * [it] is persuaded from the record * * * that the sentence of death is the appropriate sentence in the case."

In the case *sub judice,* the heinous nature of the carefully orchestrated steps taken preceding and following the murders and the shocking circumstances under which the murders of his own sons were committed lead us to the conclusion that capital punishment can not be viewed as excessive in this case. This holds true when compared to the other cases in Ohio where the death penalty has been imposed. We therefore hold that a sentence of capital punishment in the instant case is neither excessive nor disproportionate to the penalties imposed in similar cases. Thus, we affirm the finding of the court of appeals that the death sentence is appropriate in this case.

## IX

In conclusion, we find that there is no merit to any of the specific issues raised by appellant concerning the trial resulting in his convictions of the crimes described. Second, we find that the aggravating circumstances outweigh any and all mitigating factors attempted to be presented by the appellant. Third, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. Thus, in accordance with R.C. 2929.05(A), we affirm the convictions and sentence of death in this case. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WOLFF, JJ., concur.

WOLFF, J., of the Second Appellate District, sitting for WRIGHT, J.