JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Lemil Carter, appeals from his conviction of domestic violence entered in the Cuyahoga County Court of Common Pleas. For the reasons stated herein, the judgment of the trial court is affirmed.
 {¶ 2} Carter was charged on October 14, 2004 under a four-count indictment. Count one, domestic violence with a furthermore specification, count three, kidnapping, and count four, abduction, all pertained to charged offenses occurring March 27, 2004. Count two, domestic violence with a furthermore specification, pertained to a charged offense occurring May 31, 2004.
 {¶ 3} Carter entered a plea of not guilty to the charges. Prior to trial, Carter indicated on the record that he wanted the court to appoint new counsel to represent him. The trial court denied this request.
 {¶ 4} At trial, the victim testified that she began dating Carter in late 2003 and she began living with Carter a couple of months later. The victim proceeded to testify about an incident that occurred on March 27, 2004. The victim stated that on that date, Carter became upset and accused the victim of cheating on him after she received a call from a male friend. The victim testified that Carter began choking her, pulled her hair as she attempted to run out of the front door, followed her upstairs with a hammer, tried to swing the hammer at her but struck the wall, threatened to hit her kneecaps with the hammer, continued to accuse her of cheating *Page 4 
on him, and pulled her downstairs by her hair when she refused his command to go downstairs. The victim stated that Carter would not let her leave the house.
 {¶ 5} The next day, the victim made a police report. The victim stated she believed she had a few marks on her neck, but had no visible injuries to her face. The victim did not go to the hospital for this incident. The victim stated that she did get back together with Carter after this incident occurred.
 {¶ 6} Officer James Zak testified that he and his partner prepared a police report in response to the March 27 incident. He noticed that the victim did have some minor bruising to her neck that appeared to be less than a day old. No photographs were taken, and the victim declined medical support.
 {¶ 7} The victim also testified as to the following events concerning an incident that occurred in May 2004. The victim stated she and Carter were out together when they were pulled over by the police because the victim was driving with a blocked and expired license. The victim stated she had to spend the night in jail. At some point, the victim's brother took her car to his house because the victim did not want to drive the car until she fixed the problems with her license. On May 31, 2004, Carter asked the victim to get her car. The victim declined because she was still working on getting her license straightened out. Carter told the victim that he would drive, but the victim did not want him to, because his license was suspended. The victim stated that Carter got upset and hit her with his fist, causing blood to start gushing from her nose. The victim began screaming, and Carter's *Page 5 
mother came into the room. The victim testified that after Carter's mother refused to help her, she ran up the street and asked a neighbor to call an ambulance and the police.
 {¶ 8} Officer Orville Taylor testified that he responded to the May 31 incident. As he arrived at Carter and the victim's house, he noticed a vehicle pulling away, with a male fitting the suspect's description driving and a female in the passenger seat. The officer proceeded to the house and encountered the victim. He testified that the victim was bleeding heavily from the face, her nose was swollen, and there was a large bump on the center of her nose, which made the officer think it was broken. Once the officer calmed the victim down, he took a report of the incident.
 {¶ 9} Officer Taylor stated that the female who was in the car that was observed pulling away returned to the scene. The officer indicated that she was Carter's mother. The officer testified that Carter's mother was not being cooperative and was not providing much information even though she was present at the scene of the incident.
 {¶ 10} The police took pictures of the victim as well as the blood that was on the kitchen floor. Photographs were introduced showing the victim's nose and blood on her shirt, as well as blood on the kitchen floor. The victim went to the hospital the next day. *Page 6 
 {¶ 11} The victim testified that she did start talking with Carter again after the May incident, but she did not move back in with him and their relationship did eventually come to an end.
 {¶ 12} The victim conceded on cross-examination that she and Carter applied for a marriage license after the May 31 incident. The victim stated that she was in love and Carter had promised "never to do it again" and she believed him. The two never married. The victim also acknowledged that her brother had been accused of assaulting Carter and had pled guilty to resulting charges.
 {¶ 13} Evidence was also introduced establishing that Carter had a prior domestic violence conviction in July 1998. Although mention was made of an aggravated assault conviction associated with this prior offense, the court found no prejudice occurred and indicated the jury would be informed that the jury was to receive the prior history only as one of the elements to the offense of domestic violence in this case and should disregard it for any other purpose.
 {¶ 14} At the conclusion of the state's case, Carter's counsel made a motion for mistrial and a motion for acquittal under Criminal Rule 29. The trial court denied these motions.
 {¶ 15} Defense counsel called Carter's mother to testify. She stated that on May 31, 2004, she was parked in the driveway in front of the house when she heard loud arguing. When she went inside, she claimed she observed the victim and her son in the living room arguing with each other. She claimed she did not observe that *Page 7 
anyone was injured, she did not notice any bleeding from the victim or on the kitchen floor, and the victim did not ask her for any help or to take her to the hospital.
 {¶ 16} At the conclusion of trial, the jury returned a verdict of guilty on count two, for the domestic violence offense occurring on May 31, 2004, with a furthermore specification, and not guilty on the remaining counts. The court sentenced Carter to seventeen months in prison and ordered the sentence to be served consecutive to any sentence that Carter was presently serving.
 {¶ 17} Carter filed this appeal, raising three assignments of error for our review. His first and second assignments of error provide as follows:
 {¶ 18} "I: The trial court erred in denying appellant's motion for acquittal as to the charge when the state failed to present sufficient evidence to sustain a conviction."
 {¶ 19} "II: Appellant's conviction is against the manifest weight of the evidence."
 {¶ 20} Carter challenges his conviction for domestic violence as being against the sufficiency and manifest weight of the evidence. R.C. 2919.25, the domestic violence statute, provides in relevant part: "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 21} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements *Page 8 
of the crime proven beyond a reasonable doubt." State v. Leonard,104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 22} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 23} Carter argues that there is no reliable evidence that he caused the injuries to the victim, that despite the alleged incidents the victim was prepared to marry Carter, that the victim admitted to being upset about charges being filed against her brother for assaulting Carter, and that Carter's mother did not observe any injuries on the victim as a result of the alleged domestic violence incident on May 31, 2004.
 {¶ 24} Upon the record before us, we disagree. Although the victim did continue her relationship with Carter for a period of time despite these incidents, this is not unheard of in domestic violence cases. Further, although Carter's mother purportedly did not observe any injuries to the victim, the police found the mother to *Page 9 
be uncooperative. The victim's testimony concerning the May 31 incident was corroborated by the testimony of Officer Taylor, who observed that the victim was bleeding heavily from the face and that her nose was swollen. The photographs depicting blood on the victim's clothes and on the kitchen floor also supported the victim's claim that she was injured. Also, the mother's testimony did place Carter at the scene of the incident. Finally, although the victim's brother had pled guilty to assault charges relating to Carter, the record reflects that the assault was subsequent to the incident herein.
 {¶ 25} Viewing the evidence in a light most favorable to the state, we find that sufficient evidence was presented upon which any rational trier of fact could find beyond a reasonable doubt that Carter committed the domestic violence offense. Furthermore, after examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, Carter's first and second assignments of error are overruled.
 {¶ 26} Carter's third assignment of error provides the following:
 {¶ 27} "III: The trial court abused its discretion and denied appellant his right to the effective assistance of counsel when it failed to make an adequate inquiry into appellant's complaint about his trial counsel and had appellant proceed with the same attorney." *Page 10 
 {¶ 28} Under this assignment of error, Carter contends that his request for new counsel was summarily denied. He states that he desired new counsel because it took 19 months for him to be indicted in this matter. Carter argues that the trial court failed to allow him to specifically address his concerns or to inquire of counsel as to what was occurring.
 {¶ 29} A review of the record in this case reflects that the trial court did discuss on the record Carter's request for new counsel. The court indicated that Carter was already being represented by a second lawyer in the matter, and the court informed Carter that lawyers provide legal advice based upon the law and that simply because a lawyer tells a client something that the client does not wish to hear does not mean the lawyer is not a good lawyer. The court proceeded to allow Carter to address his concerns. Carter questioned his attorney's zealous representation and indicated that his attorney had not given him the opportunity to actually talk to him and tell his side of the story. Carter also questioned the fact that it took 19 months to be indicted in the matter. The trial court denied Carter's request for new counsel and informed Carter that he did have a right to represent himself in the matter. Carter fails to show how he was prejudiced by the claimed deficiencies of counsel.
 {¶ 30} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper *Page 11 
representation. Strickland v. Washington (1984), 466 U.S. 668, State v.Brooks (1986), 25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 31} Here, Carter has not demonstrated a lack of competent counsel or that the defense was prejudiced by counsel's performance or the delay in indicting him. Indeed, Carter has failed to point to any facts or evidence that he wished to provide to defense counsel prior to the proceedings that would have affected the trial of this matter. Likewise, he has failed to show how having more time with defense counsel to explain his version of the events would have affected the proceedings or the testimony that was introduced against him. Upon the testimony presented by the witnesses at trial, there was sufficient evidence for a jury to convict Carter of the domestic violence charge and there has been no showing that, but for the claimed deficiencies in counsel's performance, the result of the trial would have been different. Carter's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's *Page 12 
conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, P. J., and MARY EILEEN KILBANE, J., CONCUR *Page 1