[Cite as *State v. Roberts*, 2016-Ohio-7400.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103980**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# RODNEY ROBERTS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-592109-A

**BEFORE:** Jones, A.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 20, 2016

**ATTORNEY FOR APPELLANT**

Anita Barthol Staley
7327 Center Street
Mentor, Ohio 44060

Rodney Roberts, pro se
Inmate #A673-056
Lorain Correctional Institution
2075 South Avon Belden Road
Grafton, Ohio 44044


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Brian Radigan
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., A.J.:

**{¶1}** Defendant-appellant Rodney Roberts challenges his conviction for murder with a three-year firearm specification, which was rendered after a plea. He also challenges the imposition of a $20,000 fine. For the reasons that follow, we affirm.

**{¶2}** In 2015, Roberts was charged with counts of aggravated murder, murder, aggravated burglary, felonious assault, and having weapons while under disability. With the exception of the weapons charge, all the counts contained one- and three-year firearm specifications. The charges stemmed from the shooting death of Calvin Jackson, Jr., Roberts's cousin.

**{¶3}** After negotiations with the state, Roberts pleaded guilty to Count 1, which was amended from aggravated murder to murder with a three-year firearm specification. The remaining counts were nolled. The trial court sentenced Roberts to 15 years to life in prison, plus three years on the firearm specification, for a total of 18 years to life. The court also imposed a $20,000 fine.

**{¶4}** Roberts now presents the following assignments of error for our review:

I. The trial court erred to the prejudice of appellant by accepting his guilty plea, where such plea was not made knowingly, voluntarily, or intelligently.

II. The trial court abused its discretion by failing to consider whether the appellant could pay the $20,000 fine that was assessed to appellant.

III. Appellant was denied the effective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, where counsel's deficient performance rendered appellant's plea involuntary.

**The Plea**

{¶5} In his first assignment of error, Roberts contends that his plea was not knowingly, voluntarily, and intelligently made. Specifically, he contends that he (1) did not understand the nature of the charge to which he was pleading, (2) never pleaded to the gun specification, and (3) did not understand the consequences of the plea because he was not properly informed of parole.

{¶6} The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *Cardwell* at *id.*

{¶7} Crim.R. 11(C)(2) provides in relevant part that in felony cases the court may refuse to accept and shall not accept a plea of guilty without first addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶8} Strict compliance by the trial court is required for the waiver of the constitutional rights set forth under Crim.R. 11(C)(2)(c). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. Under the more stringent standard for constitutionally protected rights, a trial court's acceptance of a guilty plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant, which, in substance, explained the relevant constitutional rights "in a manner reasonably intelligible to that defendant." *Ballard* at paragraph two of the syllabus.

{¶9} With regard to the nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b), reviewing courts consider whether there was substantial compliance with the rule. *Veney* at ¶ 14-17. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Further, if the record demonstrates that, even in spite of any error on the trial court's part, the defendant appreciated the effect of his or her plea and waiver of rights, there is still

substantial compliance. *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995).

{¶10} Moreover, a defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue. *Veney* at ¶ 17. The test for prejudice is whether the plea would have otherwise been made. *Id.*

{¶11} We first consider Roberts's contention that he did not plead to the gun specification, and find it untrue. The assistant prosecuting attorney explained the agreement reached by the state and Roberts on the record. He stated that Roberts would be pleading to an amended Count 1, as follows:

> [M]urder, in violation of [R.C.] 2903.02(A), an unclassified felony which carries with it [a] * * *mandatory prison term of life in prison with [the] possibility of parole after 15 years. In addition to pleading to murder, * * * the defendant also will plead guilty to a three-year firearm specification which will run prior to and consecutive to any sentence imposed on the murder conviction. * * * With this plea of murder, as well as the three-year firearm specification, the defendant will be pleading guilty to a mandatory term of life in prison with the possibility of parole after 18 years.

{¶12} Roberts's counsel agreed that the assistant prosecuting attorney had "accurately stated our agreement," and that Roberts was "aware of not only the possible penalty, but the only penalty which will be imposed here which is 18 to life."

{¶13} In its colloquy with Roberts, the trial court stated that "you are pleading guilty to a three-year gun spec and the murder, and you will be sentenced 15 to life on the murder and a three-year gun spec. And the 15 to life means no parole eligibility with the gun spec until he has done 18 years." Roberts indicated that he understood. The court

inquired, "how do you plead to the charges as contained in count one, *it is murder, with a three-year gun specification*, this is an unspecified felony * * *?"   (Emphasis added.) Roberts answered "Guilty."[1]

{¶14} On this record, Roberts pleaded to the three-year gun specification and his contention to the contrary is without merit.

{¶15} Roberts's other two claimed errors in this assignment — that he did not understand the nature of the charge to which he was pleading and did not understand the consequences of the plea because he was not properly informed of parole — implicate nonconstitutional rights and, therefore, we review to determine whether the trial court substantially complied in its advisements to Roberts.

{¶16} In regard to his claim that he did not understand the nature of the charge to which he was pleading, Roberts contends that he was "unable to provide the court any factual basis from which to determine whether [he] understood the nature of the charge, was knowingly entering a plea of guilty, or was even admitting guilt."   According to Roberts, the crime happened because he "was scared and knew that the victim always carried a weapon," and he "thought that the crime he was pleading to included the element of self-defense."   We are not persuaded by Roberts's contentions.

{¶17} When asked by the court what had happened, Roberts stated that he and Jackson got into an argument over money Jackson allegedly owed him and "it got real

---

[1]At the conclusion of the plea hearing, the assistant prosecuting stated, "just to be clear, I think we probably for the record need him to plead guilty to the three-year firearm specification." The bailiff stated that Roberts had pleaded to it and defense counsel agreed.

crazy." According to Roberts, Jackson was upset that he would ask for his money when he (Roberts) allegedly did not even bother to check on Jackson after a recent hospitalization. Roberts told the court that Jackson was upset, and that scared Roberts, who knew that Jackson "always" had a weapon on him, so he shot him.

{¶18} The court asked Roberts why he did not just walk away:

You're the guy that's got the prior aggravated assault, you're the guy that's got a prior CCW,[2] you're the guy who has a prior arrest for drug possession, trafficking, right? Right? And you're scared of him? Right? You know I'm not going to milk this or belabor this, it's just a senseless crime by an idiot who has been told over and over and over again not to be around a gun. Right? Right?

{¶19} Roberts agreed. Roberts's counsel, who is an experienced and competent Cuyahoga County defense attorney, informed the court, as mentioned, that Roberts understood the agreement he had reached with the state, and wished to voluntarily and knowingly waive his rights and plead guilty to murder with a three-year firearm specification. Counsel did not argue that the crime was committed in self-defense; rather, he called it a "senseless tragedy." Roberts indicated that he understood the charge to which he was pleading and that he was satisfied with his counsel. When given the opportunity to ask questions, Roberts stated that he had none. On this record, we are not persuaded by Roberts's contention that he believed he was pleading to a crime that contained elements of self-defense.

{¶20} We are likewise not persuaded by Roberts's contention that his plea was

---

[2]Carrying concealed weapon.

invalid because he did not understand the consequences of it because he was not properly informed of parole. Specifically, Roberts contends that the court misinformed him of the fact that if he were granted parole after 18 years he would be "subject to a lifetime on parole and [could be] reincarcerat[ed] for life for any violation." He cites *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, in support of his contention.

{¶21} In *Clark*, the defendant pleaded to aggravated murder with a three-year firearm specification. The court sentenced him according to the parties' jointly recommended sentence of life imprisonment with the possibility of parole after 28 years; the sentence consisted of 25 years to life on the aggravated murder conviction and three years on the firearm specification.

{¶22} On appeal, the defendant contended that his plea was invalid because at the plea hearing the court incorrectly stated that he would be subject to postrelease control after serving his sentence. The case was certified to the Ohio Supreme Court for consideration of the following:

> Is a guilty plea knowing, intelligent, and voluntary when the trial court misinforms the defendant that he or she will be subject to five years post-release control if released and up to nine months in prison for any violation when, in fact, the defendant faces a lifetime of parole and re-incarceration for life for any violation?

*Id.* at ¶ 1.

{¶23} After review, the court found that the trial court's misstatements were not limited to the plea colloquy; rather, the misstatements "permeated" the written plea agreement signed by the defendant, and the sentence as described and imposed by the trial

court. *Id.* at ¶ 4. The court also found that the trial court proceedings "incorrectly combine[d] the concepts of postrelease control and parole to a create a hybrid form of control that conflicts with the precise descriptions of the systems of postrelease control and parole in R.C. Chapter 2967." *Id.* at ¶ 13.

{¶24} Here, as was the case for the defendant in *Clark*, Roberts was not subject at all to postrelease control because he pleaded to an unclassified felony to which the postrelease control does not apply. *See* R.C. 2967.28. At the plea hearing, the trial court questioned the parties, "If released from a state penal institution at some point in time would he be on five years of [postrelease control]?" Defense counsel answered, "No, your Honor, parole would dictate that." The court further inquired as to whether it would be lifetime parole, to which defense counsel answered, "It would be under the Parole Board's discretion of how long they would place him on parole, but an indefinite sentence is not governed by postrelease control."

{¶25} The court then inquired of Roberts as follows: "So you understand that you could be on parole upon your release from the institution and your failure to report to the Parole Board could very well result in additional charges being filed against you?" Roberts indicated that he understood.

{¶26} The trial court's advisements here are distinguishable from the trial court's in *Clark*. Roberts was not informed of a hybrid form of postrelease control and parole, as was the defendant in *Clark*. Defense counsel made it clear that postrelease control did not apply. Further, because parole is not guaranteed, trial courts are not required to

explain it in a plea colloquy as part of the maximum possible penalty. *State v. Rolfes*, 8th Dist. Cuyahoga No. 102521, 2015-Ohio-4696, ¶ 19; *Clark* at ¶ 37. Thus, a trial court generally does not have to inform a defendant about the possibilities or intricacies of parole for a sentence that could last for the defendant's lifetime. *Clark* at *id.* But if the court does convey information about parole or informs a defendant subject to parole information regarding postrelease control, the defendant may be prejudiced by the improper information. *Id.* at ¶ 41 *Rolfes* at *id.*

{¶27} The information provided to Roberts by the court at the plea hearing substantially complied with Crim.R. 11. There was no permeation of misinformation — the trial court did not provide misinformation at all and he was advised by counsel of at least the possibility of lifetime parole. The record shows that under the totality of the circumstances, Roberts subjectively understood the implications of his plea. Further, Roberts has failed to demonstrate that he was prejudiced by any information he was given regarding parole. He contends that he was prejudiced by the court's failure to advise him that parole, if granted, would be for a lifetime because he was "also attempting to state that he committed this act because he was scared." For the reasons already discussed, Roberts's attempt to argue self-defense is without merit. And the record does not otherwise demonstrate that Roberts would not have pleaded if he had been specifically informed by the trial court that if parole were granted he would be subject to it for a lifetime.

{¶28} In light of the above, the trial court fulfilled its Crim.R. 11 obligations in

accepting Roberts's plea, and his first assignment of error is overruled.

**Imposition of the Fine**

{¶29} In his second assignment of error, Roberts contends that the trial court abused its discretion by failing to consider whether he could pay the $20,000 fine it imposed.

{¶30} A trial court is required to impose all mandatory fines specified for a particular crime unless the court determines that the defendant is indigent. *State v. Miller*, 8th Dist. Cuyahoga No. 86505, 2006-Ohio-4752 , ¶ 8. For the court to find a defendant indigent, an affidavit of indigency must be filed in accordance with R.C. 2929.18(B)(1), which reads as follows:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division the court shall not impose the mandatory fine imposed upon the offender.

{¶31} Roberts did not file an affidavit of indigency. Moreover, he failed to indicate to the court that he would be unable to pay the mandatory fine. This court has addressed a defendant's failure to raise the issue, stating:

> It is clear that the court should consider the impact a fine has on the offender, however, the court is required to consider such factors only if evidence is offered at the sentencing hearing. Where the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal.

(Citations omitted.) *State v. Frazier*, 8th Dist. Cuyahoga Nos. 71675, 71676, 71677 and 71678, 1997 Ohio App. LEXIS 4560, *15-16 (Oct. 9, 1997).

**{¶32}** On this record, the trial court did not abuse its discretion by failing to inquire into Roberts's ability to pay the fine, and his second assignment of error is overruled.

**Assistance of Counsel**

**{¶33}** For his final assignment of error, Roberts contends that he was denied the effective assistance of counsel. As grounds, he states that he would not have pleaded guilty if he had known that a $20,000 fine would be imposed, he was not clearly advised about parole, and he did not understand that self- defense was not an element of the offense to which he pleaded.

**{¶34}** In order to substantiate a claim of ineffective assistance of counsel, Roberts is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 147-148, 495 N.E.2d 407 (1986).

**{¶35}** In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. *State v. Smith*, 17 Ohio St.3d 98, 101, 477 N.E.2d 1128 (1985); *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965).

**{¶36}** For the reasons already discussed in resolving the other two assignments of error, we find Roberts's contentions meritless. Additionally, as it relates to the fine, the

trial court advised Roberts about it at the plea hearing. Moreover, even if his attorney had filed an affidavit of indigence, he was not automatically entitled to waiver of the fine. *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). There must be a showing that a defendant is unable to pay the fines, and there is no affirmative duty on the trial court to make a finding that a defendant is able to pay. *See id.* at syllabus.

{¶37} The record here demonstrates that the trial court would not have waived the fine. Specifically, in imposing the fine and court costs, the court stated, "I'm not going to let people put money on your books, and you have cable and this and that." The court stated that even if the imposition of the fine and court costs was merely "theoretical," it was imposing them nonetheless.

{¶38} In light of the above, Roberts's ineffective assistance of counsel claim is without merit.

{¶39} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR