OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and oral arguments before this court. Appellant James Mosley appeals the decision of the trial court finding him guilty of two counts of carrying a concealed weapon, one count of weapon under disability, and one count of trafficking in cocaine, and sentencing him to twelve months concurrent incarceration on the three weapons charges and ten months on the trafficking charge to run consecutive to each other. Although Mosley raises four challenges to his conviction and sentence, for the foregoing reasons the judgment of the trial court is affirmed.
 {¶ 2} First, Mosley claims the trial court abused its discretion when it found him competent to stand trial. Where there is a divergence of opinion among experts, as there was in this case, the issue becomes a matter of credibility. Under such circumstances, the weight to be given the evidence and the credibility of the witnesses are primarily for the judge. We cannot say the trial court's assessment of witness credibility and conclusion that Mosley was competent to stand trial in this case is an abuse of discretion.
 {¶ 3} Second, Mosley claims the trial court abused its discretion by taking his plea of no contest when he was incompetent. The standard for determining the competency to stand trial and the competency to enter a plea were the same: whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him. Accordingly, Mosley was competent to enter a plea.
 {¶ 4} Third, Mosley claims he received ineffective assistance of counsel. Mosley first contends that the assistance of counsel has been rendered nugatory by Mosley's incompetence. Mosley explains that counsel cannot help him if he cannot provide counsel with any information regarding the crimes. However, appellate courts do not look at ineffective assistance of counsel claims from this perspective. Moreover, amnesia alone does not deny a defendant effective assistance. Nor does counsel's strategic decisions regarding which witnesses to call regarding Mosley's competency deny effective assistance. Thus, we cannot say counsel's actions were ineffective.
 {¶ 5} And, finally, Mosley claims the trial court abused its discretion by imposing more than the minimum sentence without making factual findings to support his sentence. The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors. Since the trial court made the requisite finding of likely recidivism on the record, it met its burden.
 Facts {¶ 6} On June 30, 2000, the Youngstown police conducted a traffic stop of Mosley's car because of loud music. As the police approached the car, they observed a loaded magazine with nine-millimeter rounds lying on the front passenger seat. When Mosley stepped out of the vehicle at the officer's request, he admitted to having a gun on his person as well as having guns in the car. A subsequent search of the car yielded a nine-millimeter handgun with a laser sight, which was loaded with a 27-round ninemillimeter magazine and a .380 caliber handgun with a magazine, which was concealed under the driver's seat. Because of a drug-abuse conviction in Youngstown Municipal Court, Mosley was under a disability at the time of the search and arrest. Mosley was then indicted, in Case Number 00 CR 591, by a grand jury for two violations of carrying a concealed weapon and one violation for having a weapon while under disability.
 {¶ 7} According to Mosley, on November 20, 2000, he was involved in an automobile accident which caused trauma to his head. Mosley raised the issue of his competence to stand trial and a psychological examination by Dr. Palumbo was ordered by the trial court on January 9, 2001.
 {¶ 8} On March 9, 2001, Mosley sold crack cocaine to a confidential informant. On April 5, 2001, a grand jury indicted Mosley on drug charges relating to the sale of crack cocaine and complicity to trafficking in marijuana in Case Number 01 CR 352.
 {¶ 9} On April 16, 2001, Dr. Palumbo concluded that Mosley was competent to stand trial and submitted his report dealing exclusively with Case Number 00 CR 591.
 {¶ 10} On April 26, 2001, Mosley requested a second evaluation of his competency under both case numbers at the State's expense. This request was granted and Dr. Nalluri was ordered by the trial court to perform a second evaluation of Mosley's competency. On December 27, 2001, Dr. Nalluri filed his report concluding that Mosley was incompetent to stand trial.
 {¶ 11} A hearing at which both doctors testified was conducted under both case numbers. After that hearing, the trial court concluded that Mosley was competent to stand trial.
 {¶ 12} Mosley entered pleas of no contest to two counts of carrying a concealed weapon, one count of weapon under disability, and one count of trafficking in crack cocaine. The trial court sentenced Mosley, under both case numbers, to twelve months concurrent incarceration on the three weapons charges and ten months on the trafficking charge to run consecutive to each other, for a total of twenty-two months. Mosley now brings this delayed appeal.
 Competency to Stand Trial {¶ 13} As his first assignment of error, Mosley alleges:
 {¶ 14} "The trial court erred in finding Appellant competent to stand trial thus depriving Appellant of due process of law, secured by U.S. Const., amend. XIV; a remedy in the courts by due course of law, secured by Ohio Const., art. I, § 6; to have justice administered without denial, secured by Ohio Const., art. I, § 6; and the ability to effectively defend liberty, secured by Ohio Const., art. I. § 1; and the equal protection and benefit of the laws, Ohio Const., art. I, § 2."
 {¶ 15} Essentially, the competency hearing in this case came down to a battle of the experts with one expert finding that Mosley was incompetent while the other found that he was competent to stand trial. Mosley contends on appeal that the trial court chose to accept the findings of the wrong expert. Mosley argues that, since his trial counsel repeatedly claimed on the record that he was incompetent, Dr. Palumbo's opinions were suspicious, and that objective evidence of incompetence was placed on the record, the trial court should have made further inquiry of Mosley's competence to stand trial.
 {¶ 16} Pursuant to the fundamental principles of due process, a criminal defendant cannot be placed on trial if he is legally incompetent. State v. Berry (1995), 72 Ohio St.3d 354, 359. As a general proposition, a defendant is considered competent if: (1) he has the ability to consult with his attorney in a rational manner; and (2) he has a rational and factual understanding of the proceedings. Id., quoting Dusky v. United States (1960),362 U.S. 402.
 {¶ 17} "A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). Moreover, pursuant to the statute, the burden of overcoming the presumption by a preponderance of the evidence is upon the defendant. State v.Williams (1986), 23 Ohio St.3d 16, 19.
 {¶ 18} On appellate review, competency determinations essentially raise a question of manifest weight. An appellate court should not disturb a competency determination if there was "some reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against him." Williams at 19. "[T]he adequacy of the data relied upon by the expert who examined the [defendant] is a question for the trier of fact." Id. at 19. Moreover, an appellate court should defer to the trial court's assessment of witness credibility absent an abuse of discretion. State v. Clemmons (Dec. 20, 1996), 11th Dist. No. 95-T-5305. See also State v. Johnson (May 8, 2003), 8th Dist. No. 81601.
 {¶ 19} Mosley claims Dr. Palumbo testified that his verbal IQ was 72 yet failed to give Mosley the "full battery of tests." Mosley similarly protests that his answers to Dr. Palumbo's questions about the roles of the prosecutor and defense attorney were inadequate. Similarly, Mosley couldn't possibly be competent to enter into a plea bargain when all he could do is describe it as making a deal. Mosley finds it most incredible that he could be found competent when he had no recall of the events leading up to his arrest.
 {¶ 20} At the hearing, Dr. Palumbo explained that he had reviewed the police reports before examining Mosley. Dr. Palumbo testified that he administered the Wechsler Adult Intelligence Test to Mosley. He explained that this test was used to determine the person's ability to communicate verbally in the courtroom setting. It also tests whether their thinking is within a normal range or whether there are unusual responses. Mosley scored in the borderline intellectual range which would be a score between 70 and 79. This means that 97% of the people in the general population scored higher or did better than him on verbal skills. Dr. Palumbo explained that borderline intellectual range would be someone who would generally be in the slow learning classes or LD classes. These individuals have a wide variability in their behavior and their ability.
Dr. Palumbo elaborated:
 {¶ 21} "Generally, you would expect them to function independently and carry on daily activities without any difficulty. They may need some supervision or help — or from family or friends under certain situations, but that's all variable; in other words, scoring in the borderline range would not necessarily — would mean that there's no reason to expect that you would have any particular problems just because of that."
 {¶ 22} Dr. Palumbo was asked on cross-examination how an attorney could defend Mosley if Mosley couldn't communicate to the attorney what happened. The doctor responded:
 {¶ 23} "Because he can certainly — in this case — or if a person can't recall, there's no reason that he couldn't be read or told what happened, and he has, in my opinion, enough ability, verbal ability to understand what would be read to him or what would be told to him, and diagnosis — or a finding of borderline intellectual functioning would not impair a person or preclude a person from being able to do that."
 {¶ 24} Dr. Palumbo was then asked to read a portion of his report which indicated:
 {¶ 25} "The defendant's memory for recent and remote events was somewhat impaired, as he could not recall several significant events in his life. He could not recall his approximate age, when his parents were separated, or how long he would stay with either parent. He could not remember events leading up to the current charges, but did recall more events surrounding a head-on collision that he was involved in November. On the WAIS-3, the defendant's score on the digit span subtest, which is the test for shortterm memory, was in line with the other subtest scores."
 {¶ 26} He was then asked to read another portion of his report which explained:
 {¶ 27} "Mr. Mosley did not know the nature of the charges against him. When asked what the charges were, he stated `They said I was drunk driving when I got into the accident. They said the car was on fire.' When asked about the charges of carrying a concealed weapon, he stated, `That's what somebody said it was. I think my mother told me when we went to court.' The defendant did not know if the charges were felonies or misdemeanors."
 {¶ 28} Dr. Palumbo then admitted that Mosley didn't know what his possible sentence might be and did not know what a plea of no contest was. He further admitted that Mosley's capacity to realistically challenge a prosecution witness and testify relevantly was slightly impaired and interfered with his ability to focus and concentrate. When asked why he believed Mosley was competent to stand trial, Dr. Palumbo responded:
 {¶ 29} "Well. Primarily because he was able to answer — there are typical standard questions that one asks or assesses for in a competency evaluation. They are fairly standard across the country, and they come out of what's called McGeary Competency — Competency Assessment Instrument, and these questions are very standard and one ascertains as to whether or not a person can answer these questions in a reasonable way, can participate in their — in their defense, and if there's a question about whether or not they can do that, then you want to determine the extent of that — problem.
 {¶ 30} "In this case, I felt that the defendant was suffering from some symptoms of depression, and I felt that there was a mild impairment because of his depression that had to do with his energy level, his motivation, concentration, and perhaps memory as well, but I felt that they — although they were there, they did not reach the level that they would impair him to the extent that he would be incompetent. So taking all of the — questions and the interview material and his answers, the fact that there was no mental health history in the past, my major concern was the depression, and at that point in time when I evaluated him, I did not — it was my opinion that he did not reach that level where it impaired his ability to participate in his defense and understand the charges against him."
 {¶ 31} Dr. Palumbo felt that Mosley understood the roles of the various people in the courtroom. Mosley said defense counsel's role was to try and do the best for him. The prosecutor's role was to help the other people. The jurors were people in the courtroom who listen and then decide guilty or not guilty. And a judge's role is to say guilty or not guilty. Dr. Palumbo stated that these were typical responses and nothing unusual was demonstrated here.
 {¶ 32} Dr. Palumbo later answered questions about Dr. Nalluri's report. He explained that Dr. Nalluri's finding that Mosley was suffering from post-traumatic stress disorder would generally have no effect on a finding of competency. Dr. Nalluri also diagnosed Mosley as having a psychosis; however, Dr. Palumbo disagreed with this assessment and found no evidence of any psychoses. Dr. Palumbo then testified that Mosley knew whether an act was right or wrong or criminal or not criminal.
 {¶ 33} On cross-examination, Dr. Palumbo stated that Mosley was suffering from depression. He did not feel that Mosley was malingering, but wondered if Mosley was giving his best effort. He believed Mosley started suffering from the depression after his car accident.
 {¶ 34} With regards to the traffic accident, Dr. Palumbo did not receive any medical reports but was aware that Mosley suffered head trauma and a bruised brain. When asked if he thought his conclusion about Mosley would be different if he had the medical records in front of him, Dr. Palumbo responded:
 {¶ 35} "No. I felt my evaluation was thorough. The — the evaluation was standard and sufficient to — if I felt that there was more of a question of impairment with regard to intellectual functioning, cognitive abilities, I would have done more in the way of an evaluation, but since he was functioning in the borderline range and that was fairly consistent across all the tests I administered, I didn't see any reason to go further."
 {¶ 36} Dr. Palumbo admitted that significant brain trauma could affect a person's memory and ability to communicate. However, he explained that the WAIS was the standard test used to determine the impact of any brain trauma.
 {¶ 37} After Dr. Palumbo testified about his knowledge regarding any medications Mosley may have been taking after the accident, the State admitted the doctor's report into evidence and rested.
 {¶ 38} Dr. Nalluri took the stand next. He explained with regards to Mosley's competency:
 {¶ 39} "My findings — my examination on two different occasions revealed James Mosley is not able to stand — withstand a trial at the present time. I'm — I'm — given his present inability to understand the court proceedings, the — the — the legal process that has been involved at the present time. He did not have a full understanding about what — what are the charges against him and of the courtroom proceedings and the process. He did not have a full grasp of the proceedings at the present time."
 {¶ 40} When asked how he arrived at that opinion, Dr. Nalluri testified:
 {¶ 41} "I base it on the global picture of Mr. Mosley. He suffers from multiple disorders, not one disorder, of multiple psychiatric disorders such as the posttraumatic stress disorder and the second one is a cognitive disorder and the borderline intellectual functioning and the reading disorder. When you combine these — * * *
 {¶ 42} "Okay, the first disorder is the posttraumatic stress disorder; number two, personality change due to cerebral trauma, and the number three, cognitive disorder. Cognitive means actually the brain. The next is — the cannibis has nothing to do with this and the alcohol abuse, and the reading disorder. He has a reading disorder. He has only ninth grade education. So when you combine these together, he has difficulty in understanding the nature of the charges against him and the courtroom proceedings, etcetera. That is my basis of —"
 {¶ 43} Dr. Nalluri was asked to explain the cognitive disorder. He elaborated:
 {¶ 44} "When a person had a brain injury in an auto accident where there was impact on the brain, that may cause memory difficulty, concentration difficulty, and thinking difficulty."
 {¶ 45} Dr. Nalluri then testified that he had seen some medical records from Dr. Brocker, Mosley's treating physician. He stated:
 {¶ 46} "Because of the brain trauma, he — he has difficulty in understanding what you say and what I say and in communicating his thoughts to other people, and his memory has difficulty, he has difficult time in remembering things, in grasping things."
 {¶ 47} Dr. Nalluri explained that Mosley had been communicating but in a less effective, less verbal manner than what he would expect from someone Mosley's age. He further explained that Mosley has gaps in his memory and could not give coherent, chronological, or accurate information about his arrests.
 {¶ 48} When asked about his diagnosis of "some kind of psychosis", Dr. Nalluri testified:
 {¶ 49} "Well, it's not a clear-cut case. You know, he had some abuse of some alcohol, some chemical abuse, and the — with a lot of stress and strain. Somebody can throw themselves and have a small psychotic state at times under stressful circumstances, somebody can have a mini, brief psychotic type of state. He didn't have a trauma of the head at the time when he was charged with —
 {¶ 50} "Yeah, he did suffer from the head trauma after he's been charged. The original charges were different from the head trauma. The head trauma occurred at a later time. Six months later he had the car accident."
 {¶ 51} When asked about the "cognitive disorder not otherwise specified, which he referenced in his report, Dr. Nalluri explained:
 {¶ 52} "It's a type of — certain trauma, he developed the memory difficulty, the comprehension difficulty, the inability to recall the events. We call it as a kind of cognitive disorder due to the cerebral trauma, the car accident."
 {¶ 53} Dr. Nalluri further testified that his report indicated that Mosley didn't know the wrongfulness of his act or he doesn't now presently have the ability to explain the wrongfulness of his act. That conclusion was based upon his overall examination and from the available information from his interviews and from the "global picture."
 {¶ 54} Dr. Nalluri then explained that Mosley was unable to discuss anything with regard to his arrests or what the police may have done, other than what he had read about or was told. He went on to state that Mosley was unable to communicate what happened on the days that he was arrested because he was unable to communicate in a reasonable or clear fashion.
 {¶ 55} On cross-examination, Dr. Nalluri was asked about his conclusion that Mosley was incompetent to stand trial. Dr. Nalluri admitted that he only asked Mosley if he knew what his available defenses were, he did not ask Mosley whether he knew what it meant to plead guilty. He further admitted that when he reported that Mosley did not have a reasonable understanding of the roles of various courtroom participants, Dr. Nalluri did not ask Mosley about any specific courtroom participants. However, when he did ask Mosley about the general proceedings in the courtroom, Mosley responded, "Mom, lawyer, judge, and me." Dr. Nalurri further explained that he preferred to ask more general questions rather than putting words in people's mouths.
 {¶ 56} The prosecutor next challenged Dr. Nalurri's finding that Mosley was in a psychotic state on June 30, 2000 but was not suffering from a psychotic disorder at the time he was examined. As to Dr. Nalluri's determination that Mosley did not understand the wrongfulness of his actions, the prosecutor specifically brought up the instance where Mosley was pulled over by police and he volunteered the information about guns being in the car. The doctor admitted that Mosley's actions were a sign that he knew it was wrong to have the guns in the car. However, Dr. Nalluri later testified that Mosley was incapable of telling whether or not the police report was accurate or true since he had no memory of being pulled over.
 {¶ 57} Dr. Nalluri was then questioned how Mosley was capable of the calculated criminal endeavor of selling drugs but could still be found incompetent to stand trial. The doctor responded that the act of selling drugs was in the past and he may have been competent then. All the doctor knew for sure was that Mosley was not competent when he tested him.
 {¶ 58} The prosecutor then asked Dr. Nalluri if he would change his opinion of Mosley if he knew that Mosley allegedly shot someone before he got in the car accident, that in 2000 the police found weapons, narcotics, and a bullet-proof vest in his house, and that he was a member of the Lincoln Knolls Crips. Dr. Nalluri responded that maybe there should be a higher threshold to determine whether Mosley was lying or malingering.
 {¶ 59} After some further questioning by the State, the hearing was terminated and the trial court took the matter into consideration. The court ultimately decided that Mosley was competent to stand trial. This court must now decide whether the trial court abused its discretion in coming to that conclusion.
 {¶ 60} Where there is a divergence of opinion among experts, the issue becomes a matter of credibility. Under such circumstances, "the weight to be given the evidence and the credibility of the witnesses are primarily for the [judge]."State v. DeHass (1967), 10 Ohio St.2d 230, syllabus. The presumption of competence should be left undisturbed where the evidence "is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." In re Williams (1997), 116 Ohio App.3d 237,246, citing Cooper v. Oklahoma (1996), 517 U.S. 348 quoting from Medina v. California (1992), 505 U.S. 437, 449.
 {¶ 61} It appears that is precisely what occurred in this case. Accordingly, we affirm the judgment of the trial court since it was supported by some competent credible evidence in the form of both Dr. Plaumbo's report and his testimony.
 Competency to Enter Plea {¶ 62} As his second assignment of error, Mosley next asserts:
 {¶ 63} "The trial court erred when it accepted the Appellant's plea despite the representations of counsel and considerable evidence of Appellant's incompetence, thus depriving Appellant liberties secured by U.S. Const., amend. XIV and Ohio Const., art. I. §§ 2 and 16."
 {¶ 64} In Godinez, v. Moran (1993), 509 U.S. 389, the United States Supreme Court held that, under the Due Process Clause, the standard for determining the competency to stand trial and the competency to enter a plea were the same: whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." Id. at syllabus. See also State v. Mink,101 Ohio St.3d 350, 2004-Ohio-1580; State v. Bolin (1998),128 Ohio App.3d 58, 61-62, State v. Spivey (Mar. 15, 2002), 7th Dist. No. 00 CA 106.
 {¶ 65} There is no reason to deviate from the well-established standard in this case. Because we have concluded the trial court properly determined that Mosley was competent to stand trial, this court concludes that the trial court properly allowed Mosley to plead no contest. Mosley's second assignment of error is meritless.
 Ineffective Assistance of Counsel {¶ 66} In his third assignment of error, Mosley alleges:
 {¶ 67} "Appellant was denied the effective assistance when by the trial court's ruling, which forced a plea or trial when Appellant was incompetent; and by counsel's failure to offer evidence of incompetence other than expert testimony. U.S. Const. amend. VI and XIV and Ohio Const., art. I, §§ 1, 2, 10, and 16."
 {¶ 68} To decide Mosley's claim of ineffective assistance of counsel, this court must apply the two-tier test of Stricklandv. Washington (1984), 466 U.S. 668. First, Mosley must show that counsel's actions were outside the wide range of professionally competent assistance. Second, Mosley must show that he was prejudiced as a result of counsel's actions. Id. at 689. Prejudice will not be found unless Mosley demonstrates there is a reasonable probability that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley
(1989), 42 Ohio St.3d 136, 143. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
 {¶ 69} Interestingly, Mosley first contends that the assistance of counsel has been rendered nugatory by Mosley's incompetence. Mosley explains that counsel cannot help Mosley if he cannot provide counsel with any information regarding the crimes. In other words, Mosley argues that he cannot aid in his defense and therefore counsel is "flying blind." However, appellate courts do not look at ineffective assistance of counsel claims from this perspective. This novel argument is Mosley attempting to take another bite at the competency apple.
 {¶ 70} Furthermore, the Ohio Supreme Court has determined that psychogenic amnesia does not alone render a defendant incompetent. State v. Brooks (1986), 25 Ohio St.3d 144,150-151. In Brooks, the Court noted that many jurisdictions outside of Ohio had rejected the theory that a defendant can assist in his own defense only if he can remember the circumstances surrounding the crime with which he is charged. Id. at 151, 495 N.E.2d 407. Based on this case law, the Court held that a defendant's inability to recall events of the crime alone would not deny that defendant "either the effective assistance of counsel or the opportunity to present a defense," thus amnesia alone does not render a defendant incompetent to stand trial. Id. Accordingly, it would appear that this argument must fail.
 {¶ 71} Next, Mosley contends that counsel was ineffective for not doing more to prove that Mosley was incompetent. More specifically, Mosley claims that counsel should have offered his own accounts of interactions with Mosley, or should have offered the testimony of Mosley's mother. However, this was a strategic decision by counsel. As the state points out in its brief, counsel had already secured the opinion of an expert that Mosley was incompetent. He may have risked harm to Mosley's case if counsel chose to place lay people on the stand to be cross examined by two prosecutors.
 {¶ 72} In general, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." State v. Treesh (2001),90 Ohio St.3d 460, 490. See, also, State v. Hanna,95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 118. Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland at 690, 104 S.Ct. 2052
Accordingly, we cannot say that counsel performed deficiently in this respect. For both of these reasons, this assignment of error is meritless.
 Sentence More Than the Minimum {¶ 73} As his final assignment of error, Mosley alleges:
 {¶ 74} "The trial court abused its discretion in imposing more than the minimum sentence without making factual findings to support the sentence. U.S. Const. Amend. VIII and XIV; Ohio Const., art, §§ 1, 2, and 16."
 {¶ 75} What Mosley recognizes, but criticizes in his brief, is that specific factual findings are unnecessary when imposing more than the minimum. The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors. R.C. 2929.12. For this reason, the trial court could have satisfied its duty under R.C. 2929.12 with nothing more than a rote recitation that it had considered the applicable factors.State v. Arnett, 88 Ohio St.3d 208, 2000-Ohio-302, referencingState v. Edmonson (1999), 86 Ohio St.3d 324, 326. See alsoState v. Marks (June 13, 2001), 7th Dist. No. 823; State v.Land (Mar. 19, 2002), 7th Dist. No. 00-C.A.-261.
 {¶ 76} Since the trial court made the requisite finding of likely recidivism on the record, it met the burden required by law. This assignment of error is also meritless.
 {¶ 77} Accordingly, for all of the foregoing reasons, the judgment of the trial court is affirmed.
Waite, P.J., concurs.
Donofrio, J., concurs.