[Cite as *In re J.H.*, 2022-Ohio-4213.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE J.H., ET AL.,
:
:      No. 111669
Minor Children
:
:
[Appeal by Ay.T., Mother]
:

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 23, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21902189 and AD22900097

*Appearances:*

Gregory T. Stralka, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Ay.T. ("Mother") appeals the decision of the Cuyahoga

County Court of Common Pleas, Juvenile Division, granting permanent custody of

her children, A.T.[1] and J.H.[2] ("children"), to the Cuyahoga County Department of

---

[1] D.O.B. 2/13/2018.
[2] D.O.B. 11/9/2020.

Children and Family Services ("CCDCFS" or "agency").  After a thorough review of the law and applicable facts, we affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶ 2} This is Mother's second appeal before this court.  Previously, this court reversed and remanded the juvenile court's grant of permanent custody to CCDCFS regarding A.T. only.  *In re A.T.*, 8th Dist. Cuyahoga No. 110689, 2021-Ohio-4306 ("*A.T. I*").  Due to a filing defect, Mother's appeal only pertained to A.T., despite J.H. also being placed in the agency's temporary custody at the time of A.T.'s disposition. Since A.T.'s initial removal in 2019, she has been in the care of a foster family.  When her brother, J.H., was born in 2020, he was immediately placed with the same foster family, where both children have remained for the duration of this matter.  The father of both children, N.H. ("Father"), appeals separately.[3]

{¶ 3} Following our decision in *A.T. I*, journalized in December 2021, CCDCFS filed a new complaint for permanent custody of A.T. and a motion to modify J.H.'s temporary custody to permanent custody.  The agency amended A.T.'s complaint on February 7, 2022.   Mother and Father stipulated to the amended complaint, and A.T. was adjudicated dependent.  About three months later, a permanent custody hearing pertaining to both A.T. and J.H. commenced.  Mother and Father appeared via telephone.

---

[3] *In re J.H.*, 8th Dist. Cuyahoga No. 111665.

{¶ 4} At the hearing, CCDCFS worker Shakeyah McKether, who was assigned to the case between February 2020 through May 2021, testified. She described the case plan that the agency developed to promote reunification of Mother with the children. The case plan included services for parenting education, mental-health and substance-abuse assessment and treatment, housing assistance, domestic violence counseling, and resource management. Mother was also required to obtain employment.

{¶ 5} McKether testified that during her tenure on the case, Mother was compliant with the case plan, including successfully completing recommended services for domestic violence, mental health, parenting, and housing. Despite compliance with the case plan, McKether expressed concerns that Mother did not actually benefit from the services, citing further incidents of domestic violence even after Mother completed the services. McKether was also concerned that Mother did not consistently visit the children and often offered no explanation for failing to show up for scheduled visitation. McKether noted that sometimes Mother would go "a month or more" without seeing A.T. but became more consistent with visitation after J.H.'s birth. McKether was eventually promoted within CCDCFS, and Angela McAnerney took over as the worker for the instant matter.

{¶ 6} McAnerney also testified at the permanent custody hearing. She testified that since her assignment, she has not had any concerns for domestic violence and that Mother was compliant with all services for domestic violence and parenting. Nonetheless, McAnerney did not believe that Mother benefitted from the

parenting services. She also testified that Mother was withdrawn and evasive from the agency since permanent custody of A.T. was granted to the agency. At the time of the May trial, McAnerney had not heard from Mother since February or March 2022, despite repeated attempts to contact her. Lastly, McAnerney voiced several concerns with Mother's visitation, substance abuse, housing, employment, and compliance with mental health services that will be discussed more fully herein.

{¶ 7} The children's guardian ad litem recommended that it was in the best interests of the children to be committed to the permanent custody of the agency. He explained:

> I think if the children were returned to the mother, they would be at very high risk of neglect and abuse. I think that they're doing very well in the home that they've been in for their entire lives, basically. And to remove them from that and put them in a very traumatic — a risk of a very dangerous situation would be a bad idea.

(Tr. 122.)

{¶ 8} Mother's guardian ad litem suggested that Mother substantially complied with her case plan, citing a year of sobriety, parenting classes, and domestic violence classes. She also testified that the agency failed to arrange visitation with A.T. after this court's initial reversal in *A.T. I.*, so Mother should be given additional time to complete her case plan.

{¶ 9} The court issued decisions granting permanent custody of both A.T. and J.H. to the agency. Mother initiated the instant appeal from both orders, assigning three errors for our review.

1. The trial court's denial of a request for continuance to allow trial counsel to effectively represent the appellant at an in-person hearing was an abuse of discretion.

2. The findings by the trial court granting permanent custody were against the manifest weight of the evidence.

3. The Department of Children and Family Services failed to present sufficient evidence to establish a basis upon which permanent custody could be granted.

## II. Law and Analysis

### A. Motion for Continuance

{¶ 10} In her first assignment of error, Mother argues that the trial court erred in denying her oral motion to continue the May 19, 2022 hearing because she was unable to attend in person.

{¶ 11} While the court reviewed preliminary matters on the date of the permanent custody hearing, Mother's counsel informed the court that Mother told him that morning that she would be unable to attend the hearing in person and requested that she be able to attend by telephone. Mother's counsel moved to continue the trial, noting that "I would prefer if she was here in person so I can confer with her as the trial progresses." (Tr. 7.) CCDCFS objected on the basis that Mother did not give a good reason for not attending in person and because the matter was set for trial well in advance. The court denied Mother's request for a continuance noting that it would allow counsel to step out at any point if a private conversation was needed.

**{¶ 12}** The decision to grant or deny a motion for continuance is left to the broad and sound discretion of the trial judge, and an appellate court may not disturb the trial court's ruling absent an abuse of discretion. *Cleveland v. Washington*, 8th Dist. Cuyahoga Nos. 97945 and 97946, 2013-Ohio-367, ¶ 11, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. Such an abuse ""implies that the court's attitude is unreasonable, arbitrary or unconscionable."" *State v. Montgomery*, Slip Opinion No. 2022-Ohio-2211, ¶ 135, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). This court has also summarized the pertinent juvenile and local rules as follows:

> Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Further, [Loc.R. 35(C)] of the Juvenile Division states: "No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel."

*In re X.R.*, 8th Dist. Cuyahoga No. 90066, 2008-Ohio-1710, ¶ 21.

**{¶ 13}** Mother appears to argue generally that termination of parental rights is a serious matter, and therefore, warrants the granting of a continuance. We agree

that the termination of parental rights is an incredibly serious matter. However, the record does not indicate that Mother showed good cause for her absence. At trial, Mother's counsel suggested that the continuance should be granted so that he can properly communicate with Mother during the trial. However, the trial court took this into consideration and allowed Mother's counsel to stop at any time if he needed to speak with Mother privately. The record indicates that Mother herself asked to appear by telephone and did not set forth any reasons for her absence. We therefore find this portion of Mother's argument without merit.

{¶ 14} Mother also argues that the denial of the continuance "denied her of effective assistance of counsel as [Mother's counsel] was not able to effectively and practically communicate with [Mother] during trial." We note that an ineffective-assistance-of-counsel claim is typically aimed at the attorney's conduct, not the trial court's conduct. This is exemplified by the elements needed to prove an ineffective-assistance-of-counsel claim that require an appellant to demonstrate that counsel's performance "fell below an objective standard of reasonable performance and that she was prejudiced by that deficient performance." *In re D.W.*, 8th Dist. Cuyahoga No. 98717, 2013-Ohio-272, ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986). The record does not indicate that Mother's counsel was ineffective and in fact, Mother's counsel acted properly in requesting a continuance. We find no error in the trial court's ruling that supports any ineffective-assistance-of-counsel claims. Mother's second argument is without merit.

{¶ 15} Upon consideration of Mother's arguments, we find that the trial court's ruling on Mother's continuance was not arbitrary, unreasonable, or unconscionable. Mother appears to have chosen to appear by telephone of her own volition and has not set forth any arguments demonstrating good cause for her inability to participate in person. We therefore overrule Mother's first assignment of error.

### B. Manifest Weight and Sufficiency

{¶ 16} In her second and third assignments of error, Mother alleges that the trial court erred in granting permanent custody of both A.T. and J.H. to the agency because both dispositions were against the manifest weight of the evidence and were based on insufficient evidence. Under her manifest-weight challenge, Mother argues that, like in *A.T. I*, the trial court merely tracked the language of each prong and did not make specific findings. Under her sufficiency challenge, Mother argues that the agency failed to meet its burden in establishing the elements required by R.C. 2151.414(E)(1).

{¶ 17} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 18} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence that the essential statutory elements for an award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919. When reviewing a juvenile court's judgment in child custody cases, the Supreme Court of Ohio has stated that the "trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion." *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997).

{¶ 19} "An agency may obtain permanent custody of a child in two ways." *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 30, citing *In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 22. "An agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413. Or an agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.353(A)(4)." *Id.*

{¶ 20} In the instant matter, each of these are applicable. Each statute requires the trial court to satisfy two requirements, but each are slightly different. *In re F.M.*, 8th Dist. Cuyahoga No. 110350, 2021-Ohio-3039, ¶ 18.

{¶ 21} A.T.'s disposition was based on a complaint for permanent custody pursuant to R.C. 2151.353(A)(4). Regarding a complaint under R.C. 2151.353(A)(4), this court has previously explained:

When proceeding on a complaint with an original dispositional request for permanent custody, the trial court must satisfy two statutory requirements before ordering a child to be placed in the permanent custody of a children's services agency. Specifically, the trial court must find, "in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," and further must determine "in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child." R.C. 2151.353(A)(4).

*In re A.R.* at ¶ 31.

{¶ 22} J.H.'s disposition was based on a motion to modify temporary custody to permanent custody pursuant to R.C. 2151.413. This court has explained the process under R.C. 2151.413 as:

When an agency files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedure set forth under R.C. 2151.414 apply. Division (B) of R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court. Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to a county agency, the court must find by clear and convincing evidence (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) that granting permanent custody to the agency is in the best interest of the child.

*In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 45 (8th Dist.).

{¶ 23} We review A.T.'s disposition first. Under the first prong of R.C. 2151.353(A)(4), the court must determine that the child cannot be or should not be placed with either parent within a reasonable period of time pursuant to division (E) of R.C. 2151.414. "Only one condition needs to be found to require the court to enter a finding that the children cannot or should not be placed with either parent and no factor is weighted greater than the others." *In re F.M.*, 8th Dist. Cuyahoga No.

110350, 2021-Ohio-3039, at ¶ 23, citing *In re S.C.*, 8th Dist. Cuyahoga No. 102350, 2015-Ohio-2410, ¶ 30.

{¶ 24} Regarding Mother, the trial court made findings pursuant to R.C. 2151.414(E)(1), (E)(4), (E)(14), and (E)(16).  These state, in relevant part:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
>
> * * *
>
> (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
>
> * * *
>
> (16) Any other factor the court considers relevant.

R.C. 2151.414(E)(1), R.C. 2151.414(E)(4), R.C. 2151.414(E)(14), R.C. 2151.414(E)(16).

{¶ 25} Under R.C. 2151.414(E)(1), the trial court found that Mother "has failed continuously and repeatedly to substantially remedy the conditions causing

the child to be placed outside the child's home." We find that the evidence clearly and convincingly supports this. Since A.T. was placed in agency custody in February 2019, Mother's progress on her case plan has been inconsistent and sporadic. In December 2021, we reversed the trial court's initial grant of permanent custody because her efforts to resolve the case plan appeared promising. However, the record reflects that since our reversal, Mother has not demonstrated a willingness to comply with the case plan and indeed, seems to have regressed rather than progressed as it pertains to her case plan.

{¶ 26} Mother has not complied with the substance abuse portion of the case plan. In August 2021, Mother was hospitalized after ingesting ecstasy and was promptly referred for substance abuse services. Mother completed the initial assessment and two drug screens in September 2021 and March 2022.[4] Mother failed to follow up with any further substance abuse services, and McAnerney noted that despite several requested drug screens, Mother only complied with two.

{¶ 27} Mother also has not complied with the housing portion of her case plan. We note that the record in *A.T. I* reflected that Mother had suitable housing of her own. However, Mother has since been evicted from the suitable housing and is living with her sister. The agency has not seen her current housing situation due to Mother's evasiveness and unwillingness to provide requested information. McAnerney, however, noted that prior to Mother's eviction from the housing that

---

[4] Both of these urine drug screens were negative. Despite the agency's requests, Mother never submitted to a hair screen.

appeared suitable in *A.T. I,* Mother often had random guests who answered the door and refused to provide McAnerney with any information. McAnerney also expressed concerns about Mother's potential boyfriend, who may have been charged with or convicted of rape. Mother refused to provide any information about him so that McAnerney could verify that Mother's housing situation was suitable for children.

{¶ 28} Finally, Mother has not complied with the employment portion of her case plan. In *A.T. I,* the record reflected that Mother was employed. However, McAnerney testified that Mother informed her that she was working as an STNA at various homes but Mother never provided a pay stub. Mother later told McAnerney that she got a job at Cracker Barrel on Tiedeman Road, but when McAnerney called to verify, they did not know of Mother. Mother then told McAnerney that she picked up a few more STNA jobs but was again unable to provide a pay stub or a schedule. McAnerney did not know if Mother was employed at the time of the hearing.

{¶ 29} After our decision in *A.T. I*, Mother was presented with a second chance to demonstrate continued effort and compliance with her case plan. The evidence before us demonstrates that despite this second chance, Mother failed to maintain contact with the agency and further, failed to demonstrate any willingness to comply with her case plan. We therefore find that the trial court did not err with respect to R.C. 2151.414(E)(1).

{¶ 30} Under R.C. 2151.414(E)(4), the trial court found that Mother "has demonstrated a lack of commitment toward the child by failing to regularly support,

visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." We also find that the evidence clearly and convincingly supports this finding.

{¶ 31} Since A.T. was permanently placed in agency custody in June 2021, Mother ceased visitation with the child. McAnerney testified that Mother did not ask to see A.T. or begin visits with A.T., even after this court reversed the grant of permanent custody in *A.T. I.* However, McAnerney also admitted that she never informed Mother that she could restart visitation with A.T. after our decision in *A.T. I.* While we agree with Mother's contention that it would have been the best practice of the agency to inform Mother of this option, we find no error in the trial court's conclusion. We are persuaded by the agency's argument that Mother never expressed interest in seeing A.T., nor did she take her own initiative in requesting visitation with A.T. We are also persuaded by the agency's argument that Mother's visits with A.T. would have been as sporadic and inconsistent as her visits with J.H. The record does reflect that the agency arranged for Mother to visit with J.H. at least once weekly, and Mother hardly took advantage of these visits. Given the above, we agree that the record reflects that Mother failed to visit and communicate with A.T.

{¶ 32} Regarding Mother's failure to demonstrate that she has an "adequate permanent home," we find that the record also supports this finding. McAnerney testified that in March 2022, she learned that Mother moved from her home and

was staying with her sister.[5]  Mother provided the address, but McAnerney did not write it down and subsequently texted Mother to obtain the address; Mother did not respond.  McAnerney made attempts to visit the home, but Mother never followed through with allowing a visit to occur, stating at one point that she was "unavailable" but providing no reason or excuse.  We therefore find that the trial court did not err with respect to R.C. 2151.414(E)(4).

{¶ 33} Under R.C. 2151.414(E)(14), the court determined that Mother was "unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."  This factor appears more speculative because there is no direct evidence on the record that Mother was unwilling to provide basic necessities.  However, the Mother's conduct in failing to complete her case plan, obtain adequate housing and employment, maintain consistent contact with the agency, and visit the children indicates that this factor is clearly and convincingly supported.  We also note that Mother was provided with the contact information for A.T.'s therapist as well as appointment information and failed to ever contact the therapist's office or appear at the visits.  McAnerney notes that Mother has an inability to form a strong bond with her children.  We therefore find that the trial court did not err in making a finding under R.C. 2151.414(E)(14), and

---

[5] McAnerney testified that upon reviewing court dockets, Mother had been evicted.

further note that only one division (E) factor needs to be established in favor of permanent custody and two have been established.

{¶ 34} Finally, under R.C. 2151.414(E)(16), the court found it relevant that Mother had not visited with the child in approximately one year. We previously discussed Mother's visitation with A.T. and note that this factor was established under R.C. 2151.414(E)(4).

{¶ 35} The second prong of R.C. 2151.353(A)(4) required the trial court to find that permanent custody was in the best interest of the child in accordance with the five factors listed in R.C. 2151.414(D)(1).

{¶ 36} R.C. 2151.414(D)(1) does not require the trial court to find that each best interest factor applies, only that it consider each one. *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). No single factor in R.C. 2151.414(D) is given greater weight than the others. *Id.* at ¶ 56. This court has "consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights." *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 56. *See also In re P.C.*, 8th Dist. Cuyahoga Nos. 90540 and 90541, 2008-Ohio-3458, ¶ 31, citing *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 34.

{¶ 37} R.C. 2151.414(D)(1)(a) requires the court to consider "the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly

affect the child[.]" The trial court noted that "[t]he child is very well bonded with caregivers and their children." The trial court did not err in making this determination. A.T. has been in the care of her foster parents since she was first removed at two months old, and at the time of the permanent custody hearing, she was three years old. Her foster family has two biological children and is currently seeking adoption of both A.T. and J.H. The foster mother testified that "when [A.T.] comes home from day care, it's like she comes in and she has to do roll call. She has to know where everybody is. She checks, you know, for her brothers, for myself and my husband." (Tr. 101.) A.T. is bonded with not only J.H., but also her foster family's two biological children. By contrast, McAnerney noted that Mother does not have a strong bond with A.T., has not seen her in over a year, and did not attend A.T.'s therapy visits that were always made available to her. Furthermore, A.T.'s foster family has made themselves totally available to Mother and noted that despite this, Mother only reaches out about once a month via text message to ask how the children are.

{¶ 38} R.C. 2151.414(D)(1)(b) requires the court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" The trial court noted that "[t]he child is too young to express her wishes. GAL recommends permanent custody." The trial court did not err in making this finding, as the GAL did recommend permanent custody stating that return to the mother would put the children at a "high risk of neglect and abuse." (Tr. 121-122.)

{¶ 39} R.C. 2151.414(D)(1)(c) requires the court to consider "the custodial history of the child" including whether the child has been committed to agency custody for twelve or more months of a consecutive twenty-two-month period. The trial court noted that "the child has been in the uninterrupted custody of CCDCFS since February 2019, when the child was two months old, and has been in the current caregiver's home since that time." Based on the record before us, the trial court did not err in making this determination.

{¶ 40} R.C. 2151.414(D)(1)(d) requires the court to consider "the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." The trial court noted that "[c]hild deserves a safe and stable environment where the [sic] all of the child's needs can be met and she can thrive. * * * Mother has failed to continuously engage in and benefit from case plan services that were the cause for removal from the home. Neither parent currently has an appropriate home." Our own review of the record, as discussed previously, indicates that Mother *has* continuously failed to follow her case plan and has not demonstrated that her home is appropriate. Accordingly, the trial court did not err.

{¶ 41} R.C. 2151.414(D)(1)(e) requires the trial court to consider whether any of the division (E) factors from (7) to (11) apply. The trial court did not make any findings pursuant to (7) to (11).

{¶ 42} Having found no error in the trial court's consideration of the statutory requirements under R.C. 2151.353(A)(4), we find that the trial court did not err in granting permanent custody of A.T. to the agency.

{¶ 43} We now review the trial court's disposition of J.H. J.H.'s disposition was made upon a motion to modify temporary custody to permanent custody.

{¶ 44} Under the first prong of R.C. 2151.414(B), the trial court was required to find that any one of the factors in R.C. 2151.414(B)(1)(a) through (e) applied. In the instant matter, the trial court found (B)(1)(a) by clear and convincing evidence. Pertinently, this subsection reads:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 45} J.H. was born in November 2020 and has been in the custody of his foster family since that time. The twenty-two-month period had not passed at the time of the permanent custody hearing. The court noted that "the child's continued residence in or return to the home of [Mother] would be contrary to the child's best interest" and that "reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification." The record supports the trial court's finding. The trial court

reasoned that J.H. cannot or should not be placed with either of his parents. We agree that J.H. should not be placed with Mother due to her failure to comply with the case plan including failure to obtain reliable housing and employment, comply with substance abuse services, and demonstrate to the agency a willingness to create a proper environment for her children. Father is incarcerated and hasn't been provided with a case plan. We therefore find that the trial court did not err in determining that R.C. 2151.414(B)(1)(a) is applicable to the instant matter.

{¶ 46} The trial court must also determine that permanent custody is in the best interest of the child. The factors listed in R.C. 2151.414(D)(1) guide this determination, as they did for A.T. We review each in turn as they apply to J.H.

{¶ 47} R.C. 2151.414(D)(1)(a) requires the court to consider "the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[.]" The trial court noted that "[t]he child is very well bonded with caregivers and their children." The trial court did not err in determining this. J.H. was immediately placed with A.T.'s foster family after he was discharged from the hospital. J.H.'s foster mother testified that all of the children get along well, and her children look after J.H., play with him, engage with him, and help feed him. She testified that J.H. calls over the family dogs and pets them. By contrast, Mother did not utilize many of her visits to see J.H. and, at the time of the hearing, had only seen him three times in the past seven months.

{¶ 48} R.C. 2151.414(D)(1)(b) requires the court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]"  The trial court noted that "[t]he child is too young to express his wishes.  GAL recommends permanent custody." The trial court did not err in making this finding, as the GAL did recommend permanent custody stating that return to the mother would put the children at a "high risk of neglect and abuse." (Tr. 121-122.)

{¶ 49} R.C. 2151.414(D)(1)(c) requires the court to consider "the custodial history of the child" including whether the child has been committed to agency custody for twelve or more months of a consecutive twenty-two-month period.  The trial court noted that "the child has been in the uninterrupted custody of CCDCFS since November 2020, upon the child's release from the hospital, and has been with the current caregivers since that time."  Based on the record before us, the trial court did not err in making this determination.

{¶ 50} R.C. 2151.414(D)(1)(d) requires the court to consider "the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."  The trial court noted that the

> [c]hild deserves a safe and stable home environment where his needs can be met and he can thrive.  This cannot be achieved with either parents and [M]other has failed to continuously engage in and benefit from case plan services that led to the removal of the child from the home.  Father is incarcerated until November 2022.  Neither parent currently has an appropriate home for the child.

Our own review of the record, as discussed previously, indicates that Mother *has* continuously failed to follow her case plan and may not currently have an appropriate home for the children. Accordingly, the trial court did not err.

{¶ 51} R.C. 2151.414(D)(1)(e) requires the trial court to consider whether any of the division (E) factors from (7) to (11) apply. The trial court did not make any findings from (7) to (11).

{¶ 52} In J.H.'s case, the trial court also found that several subdivision (E) factors were applicable, even though it did not need to engage in such findings. Pertinently, the trial court found that R.C. 2151.414(E)(1), (4), (14) and (16), were applicable to the instant matter.

{¶ 53} Under R.C. 2151.414(E)(1), the trial court found that Mother failed to continuously remedy the conditions causing the child to be placed outside of the home. Pursuant to our earlier findings, this factor is supported by clear and convincing evidence in the record.

{¶ 54} Under R.C. 2151.414(E)(4), the trial court found that Mother has demonstrated "a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." This element is clearly and convincingly established by Mother's irregular and infrequent visitation, and her failure to maintain contact with J.H.'s foster family despite them making themselves available to her. Mother was allowed weekly visits with J.H. after his temporary placement with the agency. Mother consistently did

not engage in scheduled visitation, despite the agency providing her with transportation. Her scheduled pickup time was from 11:00 a.m. to 1:00 p.m. on Fridays and she was consistently not home or other individuals answered her door. Mother missed so many visits that transportation was changed to biweekly, and eventually J.H. was transported to Mother's house by the agency. McAnerney noted that the night before scheduled visits, she called Mother to confirm whether or not Mother would be available at the scheduled time. Sometimes Mother welcomed the visit, but other times did not respond at all. At times, when the agency received an affirmative response, the agency would bring J.H. to the door and no one would answer. At the time of the permanent custody hearing, McAnerney testified that Mother only saw J.H. three times in the past seven months.

{¶ 55} Under R.C. 2151.414(E)(14), the trial court found that Mother was unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect." As we stated in reviewing A.T.'s disposition, this factor appears more speculative because there is no direct evidence on the record that Mother was unwilling to provide basic necessities. However, Mother's conduct in failing to complete her case plan, obtain adequate housing and employment, maintain consistent contact with the agency, and visit the children supports such an inference, and we find that the evidence in totality supports this factor.

{¶ 56} Finally, under R.C. 2151.414(E)(16), the trial court found it relevant that J.H.'s sibling, A.T., "had been in CCDCFS custody since February 2019 due to Mother's inability to appropriately care for the child."

{¶ 57} Mother's contention that the trial court merely tracked the required language differs from our assessment in *A.T. I*, where we found that the evidence weighed against the factors. The evidence presented during the May 2022 permanent custody hearing indicates that Mother made no changes to further her case plan and indeed, regressed in the areas of housing, substance abuse, visitation, and employment. The trial courts findings are amply supported by the evidence. We are therefore unpersuaded that any of the evidence discussed herein was insufficient or that giving permanent custody to the agency was against the manifest weight of the evidence. We therefore find that the trial court did not err in finding that agency custody was in J.H.'s best interest.

### III. Conclusion

{¶ 58} After thoroughly reviewing the entire record, we find that the juvenile court did not abuse its discretion in awarding permanent custody of the children to CCDCFS. All of Mother's assignments of error are overruled.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR